UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

UNITED STATES OF AMERICA

VS.                                                                  CRIMINAL NO.: 3:10-cr-49-DPJ-FKB

JOSEPH L. RIGBY and RENE MORRIS

ORDER

This criminal matter is before the Court on Defendant Joseph L. Rigby's Motion to Sever [55]. The Court, having conducted oral argument and having considered the parties' submissions in light of applicable law, finds that the motion should be denied.

I.    Facts/Procedural History

Codefendants Joseph L. Rigby and Rene Morris are employees of the Mississippi Department of Public Safety. The indictment alleges that Defendants assisted unqualified applicants in obtaining commercial driver's licenses (CDLs) in violation of 18 U.S.C. § 371. Defendants also face conspiracy charges. Defendant Rigby, Morris's supervisor, now moves to sever the cases for trial pursuant to Federal Rule of Criminal Procedure 14.

II.   Standard

Federal Rule of Criminal Procedure 8(b) allows joinder of multiple defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Because Defendants were properly joined, Rigby must rely on Rule 14(a), which allows severance of joined defendants only where joinder "appears to prejudice a defendant or the government." "Prejudice" means "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S.

534, 539 (1993). Moreover, the Fifth Circuit Court of Appeals has generally noted that "[p]ersons indicted together should be tried together, especially in conspiracy cases" such as this. *United States v. Rodriguez*, 553 F.3d 380, 394 (5th Cir. 2008) (citing *United States v. Miranda*, 248 F.3d 434, 439 (5th Cir. 2001) (quoting *United States v. Neal*, 27 F.3d 1035, 1045 (5th Cir. 1994))). Indeed, joint trials "play a vital role in the criminal justice system" as the Supreme Court noted in *Richardson v. Marsh*, 481 U.S. 200, 209 (1987). Finally, even where prejudice exists, the defendant must show "the prejudice outweighed the Government's interest in economy of judicial administration." *United States v. Peterson*, 244 F.3d 385, 393 (5th Cir. 2001) (citation omitted).

III.     Analysis

The Court will address each of Rigby's arguments.

A.     *Bruton* Issue

The Government intends to use two redacted confessions from Morris in which she admits helping applicants pass their CDL tests. Rigby contends that the statements violate his Sixth Amendment right to confront Morris therefore requiring severance.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with witnesses against him . . . ." U.S. Const. Amend. VI. "[T]he principal evil at which the Confrontation Clause was directed was the . . . use of ex parte examinations as evidence against the accused." *Crawford v. Washington*, 541 U.S. 36, 50 (2004). In *Bruton v. United States*, the Supreme Court recognized a Confrontation Clause violation when a defendant's confession "expressly implicat[es]" his codefendant. 391 U.S. 123, 124 n.1 (1968). But *Bruton* is limited. As the Fifth Circuit often explains:

> Out-of-court statements of a non-testifying witness that only inferentially incriminate a defendant when linked to other evidence introduced at trial do not violate the Sixth Amendment because an instruction not to consider such a statement will be considered effective to remove it from the jury's consideration.

*United States v. Harper*, 527 F.3d 396, 403 (5th Cir. 2008) (citation omitted).

Morris's statements in this case would violate *Bruton* in their original form because she states that Rigby directed her to help the applicants. But the Government has redacted the statements to exclude all reference to Rigby and all implication that anyone other than Morris helped the applicants. During oral argument, Rigby conceded that nothing remained in the statements themselves that would implicate any other participants. Thus, the question is whether the statements, as redacted, violate *Bruton*.[1]

Two Supreme Court decisions provide parameters for discussion. First, in *Richardson v. Marsh,* the Court found no Sixth Amendment violation because the codefendant's redacted confession omitted reference to anyone other than the defendant and an identified third party. 481 U.S. 200, 202–03 (1987). A different result followed in *Gray v. Maryland*, where the Government "redacted the codefendant's confession by substituting for the defendant's name in the confession a blank space or the word 'deleted.'" 523 U.S. 185, 188 (1998). In other words, the statement in *Gray* still referenced the codefendant's alleged conduct but merely blocked out his name. As the Court noted, the redacted statements "obviously refer[ed] directly to someone, often obviously the defendant, and which involve[d] inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." *Id*. at 196. Under

---

[1]Rigby objects to the length of the redactions suggesting that they implicate him because he was Morris's boss. But no such implication is apparent from the statements themselves and would instead come from other evidence. Regardless, the format of the exhibits can be cut and pasted to remove this concern.

those circumstances, the blanks used for redaction "'*facially* incriminate[d]' the codefendant." *Id*. (citing *Richardson*, 481 U.S. at 209).

The *Gray* decision is neither surprising nor controlling. Unlike *Gray*, the Government has removed all reference to Rigby *and* all inferences to conduct by anyone other than Morris. As now redacted, the statements merely reflect that Morris helped certain individuals with their CDL tests. The case is therefore akin to *Richardson* where no constitutional infirmity was found.        Rigby acknowledges *Richardson* and its progeny, but attempts to distinguish his case by observing the close relationship between employer and employee. According to Rigby, the jury will learn that he is Morris's boss and will not hear about other employees. Thus, while there are more than 200 employees in the department, the jury will naturally infer from Morris's confessions that Rigby was involved. But Morris's statements in no way "*facially* incriminate[]" Rigby. *Id*. This is instead a classic example of an implication based on other evidence. *See United States v. Restrepo*, 994 F.2d 173, 187 (5th Cir. 1993) ("*Bruton* is not violated unless the co-defendant's statement directly alludes to the appellant, even if the evidence makes it apparent that the defendant was implicated by some *indirect* references.") (citations and quotations omitted).

Adopting Rigby's argument would represent a significant departure from well-established standards. In essence, Rigby asks the Court to consider "other evidence" beyond the face of the statements regarding the nature of the relationship to establish the necessary link. That inquiry is foreclosed. *See id.* Rigby's position would also introduce a difficult new inquiry into the nature of the relationship when deciding whether to consider "other evidence" that might create an incriminating link. He offers no authority on point, and the Fifth Circuit has applied

*Richardson* in cases where codefendants were closely associated. *See Harper*, 527 F.3d at 406 (finding no *Bruton* violation where court admitted statements by defendants' roommate).

Finally, Rigby's counsel offered a vigorous argument regarding the need to examine Morris about her statements. The arguments would be true of any case involving codefendants charged in a conspiracy, and yet it remains accepted policy that "[p]ersons indicted together should be tried together, especially in conspiracy cases." *Rodriguez*, 553 F.3d at 394.

B.   Confusion

Rigby contends that the jury will not be capable of segregating the evidence and following limiting instructions. But this is not a complicated case. There are only two defendants, and the factual disputes are fairly generic. Moreover, *Zafiro* notes that the risk of prejudice can be "cured with proper instructions, and juries are presumed to follow their instructions." *Zafiro*, 506 U.S. at 540 (1993) (citations and quotations omitted).

C.   Mutually Antagonistic Defenses

Rigby claims that his defense is antagonistic to Morris. Mutually antagonistic defenses can create prejudice. Defenses are antagonistic when they are "so diametrically opposed that the jury, in order to believe the core of testimony offered on behalf of one defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant." *United States v. Daniels*, 281 F.3d 168, 177 (5th Cir. 2002) (citations and quotations omitted). That said, "[m]utually antagonistic defenses are not prejudicial per se [, and] Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 506 U.S. at 538–39.

5

In the present case, "Defendant Rigby intends to rely on a defense that, if any offense was committed, it was committed, not by him, but by his codefendant Rene Morris, either acting alone or with others." Def.'s Mot. [55] at 4.  He suggests that "such a defense would prejudice the Defendant Morris." *Id*.  When pressed at oral argument, Rigby could not identify how he would be prejudiced, and Morris has not sought severance.  It is difficult to see how Rigby is entitled to severance without showing that he will suffer prejudice.  Regardless, severance is not required.

First, Rigby's defense is no more antagonistic than those in *Zafiro* or *Daniels*.  Rigby does not state that Morris committed a crime.  He just stated that "if any offense was committed" then it was her.  Thus, the jury could accept Rigby's plea of innocence and otherwise find that no offense was committed.

Second, even if some prejudice exists, it is not of the magnitude of the issues creating a high risk of prejudices as discussed in *Zafiro*, 506 U.S. at 539 (listing ways joinder may prejudice a defendant).  Thus, even if some risk exists, there is no "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*.

Third, even when the risk of prejudice is high, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id*. (citation omitted).  In this case, the Court will give limiting instructions.

Finally, the prejudice does not outweigh the interest in a joint trial.  The parties expect a one week trial, and the Government has stated that most of its case will be presented through the

same evidentiary sources. There is a substantial interest in trying this matter together that outweighs the risk of prejudice Rigby suggests.[2]

      D.    *DeLuna* Argument

Rigby contends that joinder would prejudice him if he testifies and Morris does not, because he would be required to comment on Morris's silence. There is no way to know whether Rigby or Morris will testify, but dicta from *De Luna v. United States* suggests that severance is necessary when a defendant is compelled to observe the codefendant's silence. 308 F.2d 140 (5th Cir. 1962). Other circuits soundly reject *DeLuna* as a basis for severance. *See*, *e.g.*, *United States v. McClure*, 734 F.2d 484, 490–91 (10th Cir. 1984). More significantly, the Fifth Circuit later explained that *De Luna* has no application unless defenses are antagonistic. *United States v. Wilson*, 451 F.2d 209, 215 (5th Cir. 1971). No such showing has been made. Finally, no reported decisions favorably cite *De Luna* in the aftermath of *Zafiro*, and its continued viability, even as limited, is questionable.

IV.    Conclusion

Rigby has failed to demonstrate a level of risk that outweighs the interest of economy of judicial administration, and what prejudice has been shown can be mitigated through limiting instructions. The motion is denied.

      **SO ORDERED AND ADJUDGED** this the 10th day of August, 2011.

                          s/ *Daniel P. Jordan III*
                          UNITED STATES DISTRICT JUDGE

---

[2]The Court may be mistaken but believes the Government has already decided to separately try another case arising from this department which will result in additional costs.